IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALFONSO BARRIENTOS, EUSEBIA NAVA, and RAUL MARCELINO CASTRO, | § § § § § § § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | 1:18-CV-934-RP |
| MIKATSUKI INTERNATIONAL, INC. *d/b/a* KIWAMI RAMEN, ASIANA RESTAURANT MANAGEMENT GROUP, INC. *d/b/a* SHABU and SHABU HOT POT & NOODLE BAR, THE NOODLES GROUP, INC. *d/b/a* SHABU, and BENNY CHIKAI LEUNG, | | |
| Defendants. | | |

## ORDER

Before the Court is Plaintiffs Alfonso Barrientos, Eusebia Nava, and Raul Marcellino Castro's (collectively, "Plaintiffs") Motion for Partial Summary Judgment. (Dkt. 14). Defendants Mikatsuki International, Inc. *d/b/a* Kiwami Ramen ("Mikatsuki"), Asiana Restaurant Management Group, Inc. *d/b/a* Shabu and Shabu Hot Pot & Noodle Bar ("Asiana"), The Noodles Group, Inc. *d/b/a* Shabu ("the Noodles Group"), and Benny Chikai Leung ("Leung") (collectively, "Defendants") have neither responded to this motion nor requested additional time to respond. The date by which Defendants' response was due has passed, *see* W.D. Tex. Loc. R. CV-7(e)(2), and the case is set for trial on December 12, 2019. (Dkt. 10 at 2).

Although this dispositive motion is unopposed, summary judgment is not automatic, and so the Court must determine whether Plaintiffs have shown that they are entitled to judgment as a matter of law on the issues for which they request it. *See Johnson v. Pettiford*, 442 F.3d 917, 918 (5th

Cir. 2006); Fed. R. Civ. P. 56(a). Having considered Plaintiffs' motion, the record, and the relevant law, the Court finds that the motion should be granted.

## I. BACKGROUND

In this action, Plaintiffs seek unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Compl., Dkt. 1, at 1). Plaintiffs, "routine kitchen worker[s]" in Defendants' restaurants, allege that Defendants "regularly scheduled [them] to work more than 40 hours per week," did not properly record hours worked and compensation paid, and failed to pay Plaintiffs statutorily required overtime compensation. 29 U.S.C. § 207(a)(2). (*Id.* at 3–5).

Now, Plaintiffs "move for partial summary judgment on the issue that Defendants Leung and Asiana are liable to Plaintiffs for violations of the FLSA for failing to pay the required overtime wages for the time period between January 2017 and May 2018." (Mot., Dkt. 14, at 2). Plaintiffs list five material facts for which they ask the Court to find there is no genuine dispute: (1) that they "were employed in an enterprise covered by the requirements of the FLSA"; (2) that each of them "regularly worked for Defendants Leung and Asiana at the restaurant in excess of forty hours per week but [were] not paid overtime pay as required by the FLSA"; (3) that they "were employees of the Defendants within the meaning of the FLSA, and not independent contractors"; (4) that "Leung and Asiana were each an employer or joint employer of each of the Plaintiffs within the meaning of the FLSA"; and (5) that "Defendants Leung and Asiana violated the FLSA by failing to maintain complete and accurate records of the hours worked by Plaintiffs each workweek." (*Id.*). They further clarify that they are *not* currently seeking summary judgment on the issues of (1) "[w]hether Defendants Mikatsuki and The Noodles Group are also liable to Plaintiffs for failure to pay the required overtime wages in violation of the FLSA"; (2) "[w]hether any of the Defendants' violations of the FLSA were willful as defined by the FLSA; (3) "[w]hether Defendants Mikatsuki and Asiana

2

are liable to Plaintiffs under the FLSA as successor entities for the FLSA violations of their predecessor"; and (4) "[t]he amounts of Plaintiffs' damages under the FLSA." (*Id.* at 3).

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

Here, Plaintiffs both carry the burden at trial and are, collectively, the moving party. Generally, once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise way that evidence supports her claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, then the Court will grant summary judgment. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

Defendants did not respond to Plaintiffs' motion for partial summary judgment, though they did file an answer to Plaintiffs' complaint. (Dkt. 4). Despite their failure to respond, the Court may not automatically grant summary judgment without first ensuring that no material fact issues exist. Fed. R. Civ. P. 56(e)(3) advisory committee's note to 2010 amendment; *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). If Plaintiffs, as movants, meet their initial burden, the Court must deny the motion for summary judgment even if there is no response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). However, when no response is filed to a motion for summary judgment, the Court may take the movant's uncontroverted factual assertions as true. *Eversley*, 843 F.2d at 174; *see also Morgan v. Fed. Exp. Corp.*, 114 F. Supp. 3d 434, 437 (S.D. Tex. 2015) (collecting cases).

## III. DISCUSSION

Here, Defendants failed to address all of Plaintiffs' fact assertions. The Court will treat the unaddressed fact assertions as "undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2); *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

### A. Were Plaintiffs Employed in a FLSA-Covered Enterprise?

To establish that the FLSA covers them at all, Plaintiffs must show either that they were "engaged in commerce or in the production of goods for commerce" or that they were "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1). Plaintiffs proceed on the latter theory. (Mot., Dkt. 14, at 6–8). In this context, one of the statutory definitions of the term "enterprise engaged in commerce or in the production of goods for commerce" is "an enterprise that . . . has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . is an enterprise whose annual gross volume of sales made or business done is not less than $500,000

4

(exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A). The FLSA's accompanying regulations specify that an enterprise meets that threshold without additional computation needed if the employer knows the business's gross receipts substantially exceed $500,000 or if the business's gross receipts before year-end already exceed $500,000, as well as if at the beginning of a particular quarter, its gross dollar volume over the previous 12 months exceeds $500,000. 29 C.F.R. § 779.266(a), (b).

Asiana meets this threshold. Leung testified in his deposition that Asiana grossed $747,339 in 2017. (Leung Dep., Dkt. 14-1, at 73–74). When the restaurant at issue was known as "Kiwani Ramen," it grossed about $55,000 to 60,000 per month. (*Id.* at 78–79). The FLSA thus applies to Asiana's employment of Plaintiffs through May 2018. (*See* Mot., Dkt. 14, at 7).

Plaintiffs are also correct that while they worked for Asiana, they handled goods "produced out of state but which [were] used in the employer's business," (*id.*), satisfying the FLSA's requirements. *See* 29 U.S.C. §§ 203(s)(1)(A); 206(a), 207(a)(1). Leung acknowledged that in the restaurant, Plaintiffs handled "produce, food equipment, and utensils," some of which were produced outside of Texas. (Mot., Dkt. 14, at 7 (citing Leung Dep., Dkt. 14-1, at 70)). This activity is well within the FLSA's ambit. *See, e.g.*, *Dole v. Bishop*, 740 F. Supp. 1221, 1225 (S.D. Miss. 1990). *See generally Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (quoting *Marshall v. Victoria Transp. Co., Inc.* 603 F.2d 1122 (5th Cir. 1979)) ("[A]ny regular contact with commerce, no matter how small, will result in coverage."); *McDaniel v. Family Sleep Diagnostics, Inc.*, No. 3:13-CV-4031-KS, 2016 WL 5122123, at *2 (N.D. Tex. Sept. 20, 2016) (noting that "Congress stated that [29 U.S.C. § 203(s)(1)(A)'s] effect would expand FLSA coverage so that every enterprise doing the requisite dollar volume of business would be covered by the FLSA" and collecting cases)). To be clear, Plaintiffs proceed on the theory that Asiana, as an enterprise, itself qualifies for enterprise coverage under the FLSA, and they have alleged sufficient facts to support that conclusion. *Compare*

5

*Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985) ("Enterprise coverage substantially broadened the scope of the [Fair Labor Standards] Act to include any employee of an enterprise engaged in interstate commerce, as defined by the Act."), *with Martinez v. De La Garza*, No. CV H-09-3865, 2010 WL 11583381, at *4 (S.D. Tex. Nov. 12, 2010) ("Individual coverage remains limited to those employees who are, themselves, directly engaged in interstate commerce or in the production of goods for interstate commerce.").[1] No genuine issue of material fact exists as to whether Plaintiffs worked for an FLSA-covered enterprise from January 2017 to May 2018.

### B. Did Plaintiffs Regularly Work More Than 40 Hours per Week for Leung and Asiana without Overtime Pay?

The FLSA requires the employers it covers to pay their employees a higher overtime rate for their work "in excess of" "a workweek longer than 40 hours." 29 U.S.C. § 207(a)(2). Specifically, overtime pay "must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed." 29 C.F.R. § 778.107. The employment contract, not the parties' after-the-fact declarations, determines the "regular rate." 29 C.F.R. § 778.108; *see also id.* (citing *Walling v. Youngerman-Reynolds Hardwood Co., Inc.*, 325 U.S. 419, 424 (1945)) (explaining that the "regular rate" is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed"). Plaintiffs argue that these rules dictate that "the employer must take into consideration all remuneration paid to employees and then calculate the overtime premium." (Mot., Dkt. 14, at 11). Their argument is meritorious: the FLSA itself specifies that the regular rate "shall be deemed to include "all remuneration for employment paid to . . . the employee" (subject to a number of exceptions including overtime pay). 29 U.S.C. § 207(e).

---

[1] Even under a theory of individual FLSA coverage, Plaintiffs have likely alleged sufficient facts. Though it is not enough to establish coverage by alleging only that that the putatively covered employees handled materials that had moved in interstate commerce, Plaintiffs allege (uncontested) facts demonstrating that their work was "so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce [i.e., the restaurant] as to be, in practical effect, a part of it." *Dinh v. WeRunTexas, LLC*, No. 4:17-CV-01276, 2019 WL 4034360, at *4 (S.D. Tex. Aug. 26, 2019) (quoting *Sobrinio*, 474 F.3d at 829).

First, Plaintiffs have presented sufficient facts to establish that they frequently worked over 40 hours per week. While the exact number of hours Plaintiffs worked could be a genuine dispute of material fact, that is not the issue here. Leung testified that Plaintiffs regularly worked well over 40 hours per week. (Leung Dep., Dkt. 14-1, at 41, 89–91, 95–96).

Second, Plaintiffs' record evidence shows that their payments from Asiana and Leung did not correspond to the actual hours they worked. Plaintiffs characterize Asiana and Leung's pay methodology as a "scheme . . . to generate a pay stub that feigned compliance with the FLSA, showing an hourly rate reported for hours up to 80 in a two-week period, and an overtime rate of 1.5 times the regular rate for hours in excess of 80." (Mot., Dkt. 14, at 9). Leung himself testified that he paid Plaintiffs with checks comporting with Plaintiffs' description which he then hand-annotated with "cash" amounts. (Leung Dep., Dkt. 14-1, at 114, 117, 120–22, 124–26, 128). Plaintiffs state that the pay stubs they received from Leung "show handwritten amounts for 'cash' and 'check' which add up to the same flat salary each week, less any days missed or in addition to any days worked." (Mot., Dkt. 14, at 9).

Ultimately, Plaintiffs' total remuneration included cash, but Asiana and Leung took only the check amounts into account when calculating their regular rate of pay and paying overtime. (*See id.* at 10–11). The FLSA dictates a substantially different practice than the one which Plaintiffs have sufficiently alleged Asiana and Leung used. No genuine dispute of material fact exists here: Plaintiffs regularly worked overtime and were not paid for that work in the manner the FLSA requires.

### C. Were Plaintiffs FLSA-Covered Employees or Independent Contractors?

Plaintiffs also maintain that they were employees, as opposed to independent contractors, and thus covered by the FLSA. (Mot., Dkt. 14, at 11–12). "The definition of employee under the FLSA is particularly broad." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 312 (1992)). The core employee/independent

7

contractor inquiry in the FLSA context is "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Id.* (citing *Herman v. Express Sixty–Minutes Delivery Serv.*, Inc., 161 F.3d 299, 303 (5th Cir. 1998)). The Fifth Circuit has delineated five factors that serve as "tool[s] used to gauge the economic dependence of the alleged employee":

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.

*Hopkins*, 545 F.3d at 343 (citing *Herman*, 161 F.3d at 303) (emphasis omitted).

Plaintiffs describe themselves as having been "routine kitchen workers in a restaurant," and Leung concurred in his testimony. (Mot., Dkt. 14, at 12; Leung Dep., Dkt. 14-1, at 83–84). As Plaintiffs outline, Leung "owned and controlled the restaurant's operations" while Plaintiffs made no investments in it. (Mot., Dkt. 14, at 12; Leung Dep. 24, 28–29). Leung testified, as Plaintiffs put it, that "he alone dictated what Plaintiffs earned." (Mot., Dkt. 14, at 12; Leung Dep., Dkt. 14-1, at 29). Moreover, Plaintiffs' general job responsibilities were consistent with those that might be expected from employees, rather than independent contractors.[2] In addition, "Leung testified that Plaintiffs worked more than full time for him while he owned Asiana, over the course of several years." (Mot., Dkt. 14, at 12; Leung Dep., Dkt. 14-1, at 41, 90–91, 95–96, 106–07). Considering

---

[2] Plaintiffs' motion describes their job duties as "typical of low-skilled, low-wage workers" and thus different from those of "highly specialized contractors." (Mot., Dkt. 14, at 12). But the differences between the sets of skills required to satisfactorily perform Plaintiffs' duties versus those of "highly specialized contractors" are of type, not of magnitude. *See Hopkins*, 545 F.3d at 346 (quoting *Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308, 1314 (5th Cir. 1976)) ("Routine work which requires industry and efficiency is not indicative of independence and nonemployee status."). The terms "low-skilled" and "low-wage" are neither dispositive ("high-skilled" or well-remunerated work may yet require routine, industry, and efficiency) nor synonymous (many physically and/or mentally demanding jobs pay low wages).

these allegations, Plaintiffs have established, to the exclusion of any genuine dispute of material fact, that their economic reality was largely one of dependence upon their jobs at Leung's restaurant.

### D. Did Leung Individually Employ Plaintiffs? Did Leung and Asiana Jointly Employ Plaintiffs?

Plaintiffs next ask the Court to find that Leung and Asiana employed Plaintiffs, individually or jointly. (Mot., Dkt. 14, at 12–14). The scope of the term "employer" is broader under the FLSA than in other contexts, *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014); the FLSA itself defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d). The Fifth Circuit has applied a similar "economic reality" test to this question, evaluating "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Orozco*, 757 F.3d at 448.

Plaintiffs initially argue that Leung is individually liable as their employer. Leung himself testified that "he was solely responsible for hiring, staffing, setting pay rates and schedules, that he maintained employment records[,] and that he had the power to and did personally fire Plaintiffs. (Mot., Dkt. 14, at 13; Leung Dep., Dkt. 14-1, at 29, 86, 109–12). If someone has "operating control over employees within companies," that person "may be individually liable for FLSA violations committed by the companies." *Orozco*, 757 F.3d at 448 (quoting *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 251 (5th Cir. 2012)). The evidence Plaintiffs have presented demonstrates that Leung had operating control over them during their employment and so could be individually liable as their employer for any FLSA violations.

Plaintiffs subsequently argue that Leung and Asiana jointly employed plaintiffs. Under the FLSA, any given employee can have more than one joint employer, each of whom are responsible

for complying with the FLSA's requirements. 29 C.F.R. § 791.2(a). Here, Leung testified that this was the case: "he was one of just two corporate officers and owners of Asiana" and "was the only one who ran the restaurant." (Mot., Dkt. 14, at 14; Leung Dep., Dkt. 14-1, at 24, 28). Plaintiffs maintain that this meets all three of the FLSA regulations' example scenarios in which "a joint employment relationship generally will be considered to exist." 29 C.F.R. § 791.2(b). (Mot., Dkt. 14, at 14). They need not establish all of them (the text of the regulation is disjunctive) or even any of them (they are offered as examples). 29 C.F.R. § 791.2(b). Nevertheless, Plaintiffs have satisfied the standard by presenting uncontested evidence that Leung and Asiana "are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer," indicating that a joint employment relationship is present. 29 C.F.R. § 791.2(b). No genuine dispute of material fact exists as to this question.

### E. Did Leung and Asiana Violate the FLSA by Failing to Maintain Complete and Accurate Records of Plaintiffs' Work Hours?

Finally, Plaintiffs ask the Court to render summary judgment on the issue of whether Leung and Asiana failed to maintain complete and accurate records of how many hours Plaintiffs worked each week. (Mot., Dkt. 14, at 14–16). A basic requirement of the FLSA is that employers must "make, keep, and preserve records" of the hours their employees work. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. If an employer does not do so, she has violated the FLSA. 29 U.S.C. 215(a); *Marshall v. Partida*, 613 F.2d 1360, 1362 (5th Cir. 1980). In this case, Leung testified that "he did not keep contemporaneous records of Plaintiffs' hours worked." (Mot., Dkt. 14, at 15; Leung Dep., Dkt. 14-

1, at 105–06). There is no genuine dispute of material fact about whether Leung and Asiana violated this aspect of the FLSA.[3]

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment, (Dkt. 14), is **GRANTED**. Plaintiffs are entitled to summary judgment "on the issue that Defendants Leung and Asiana are liable to Plaintiffs for violations of the FLSA for failing to pay the required overtime wages for the time period between January 2017 and May 2018." (Mot., Dkt. 14, at 2). Their additional claims remain pending against Asiana, Leung, and the other Defendants. *See* Part I, *supra*.

**SIGNED** on November 6, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiffs also discuss the potential back pay that the Court could award them if it finds that they "performed work for which there was improper compensation" and "the amount and extent of the work can reasonably be inferred." (Mot., Dkt. 14, at 15 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). They point out that that "Leung and Asiana did not maintain the required timekeeping records for Plaintiffs, and so Plaintiffs' calculations of their damages owed will be based on their reasonable recollection of their hours worked." (*Id.*). The Court finds that the amount and/or method of calculation of damages falls outside the scope of this motion for summary judgment and is better left for determination at trial.