# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **ALFONSO BARRIENTOS,** | § | |
| **EUSEBIA NAVA, AND** | § | |
| **RAUL MARCELINO CASTRO,** | § | |
| *Plaintiffs* | § | |
| | § | **Case No. 1:18-CV-00934-RP** |
| **v.** | § | |
| | § | |
| **MIKATSUKI INTERNATIONAL, INC.** | § | |
| **d/b/a KIWAMI RAMEN; ASIANA** | § | |
| **RESTAURANT MANAGEMENT** | § | |
| **GROUP, INC., d/b/a SHABU, d/b/a** | § | |
| **SHABU HOT POT & NOODLE BAR;** | § | |
| **THE NOODLES GROUP, INC., d/b/a** | § | |
| **SHABU; and BENNY CHIKAI LEUNG,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE ROBERT PITMAN
### UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiffs' Motion for Default Judgment against Defendant The Noodles Group, Inc., filed January 20, 2020. Dkt. 33. On April 10, 2020, the District Court referred the motion to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.    Background

On October 30, 2018, Plaintiffs filed suit under the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA"). Dkt. 1. Plaintiffs are three kitchen workers employed by the defendants at their food establishment in Austin, Texas, which has been known as Chen Z, Shabu, Shabu Hot Pot & Noodle Bar, and Kiwami Ramen. Plaintiffs allege that they regularly worked more than 40 hours per week,

but the defendants violated the FLSA by failing to pay them the required overtime premium. Plaintiffs seek monetary damages, liquidated damages, attorneys' fees, and costs.

The Court entered a partial final judgment against defendants Mikatsuki International, Inc. and Asiana Restaurant Management Group, Inc. ("Asiana") on December 20, 2019. Dkt. 31. The action is stayed as to defendant Benny Chikai Leung for the pendency of his bankruptcy proceedings. *See* Dkt. 30. Plaintiffs now seek judgment against The Noodles Group, Inc. ("The Noodles Group" or "Defendant"), for which Plaintiffs worked from October 30, 2016 to December 28, 2016, when The Noodles Group sold the restaurant to Asiana.

Plaintiffs served their Complaint on The Noodles Group on January 7, 2019. Dkt. 8. Defendant has made no appearance and failed to plead, respond, or otherwise defend. On January 21, 2020, the clerk granted Plaintiffs' motion for an entry of default. Dkt. 34. Plaintiff now seeks entry of a default judgment against The Noodles Group for actual and liquidated damages of $5,291.84 and $10,157 in attorneys' fees and costs.

## II.    Legal Standard

Under FED. R. CIV. P. 55, a default occurs when a defendant fails to plead or otherwise respond to a complaint within the time required. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). After the defendant's default has been entered by the clerk of the court, the plaintiff may apply for a judgment based on such default. *Id*. Even where the defendant technically is in default, however, a party is not entitled to a default judgment as a matter of right. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). Entry of default judgment is within the court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Courts have developed a three-part test to determine whether to enter a default judgment. First, the court considers whether entry of default judgment is procedurally warranted. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).

Second, the court assesses the substantive merits of the plaintiff's claims to determine whether there is a sufficient basis in the pleadings for judgment. *Id.* Last, the court determines what relief, if any, the plaintiff should receive. *Id.*

### III.   Analysis

### A.  A Default Judgment Is Procedurally Warranted

In determining whether a default judgment is procedurally warranted, courts in the Fifth Circuit consider the following factors:

> (1) whether material issues of fact are at issue;
>
> (2) whether there has been substantial prejudice;
>
> (3) whether the grounds for default are clearly established;
>
> (4) whether the default was caused by a good faith mistake or excusable neglect;
>
> (5) the harshness of a default judgment; and
>
> (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893.

Applying these factors, the Court finds that default judgment is procedurally warranted. First, because The Noodles Group has not filed an answer or any responsive pleadings, there are no material facts in dispute. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."); *Rabin v. McClain*, 881 F. Supp. 2d 758, 768 (W.D. Tex. 2012) ("When a defendant fails to respond or otherwise defend, his default is considered an admission of the plaintiff's well-pleaded allegations of fact related to liability."). Second, The Noodles Group's failure to file responsive pleadings "threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015). Third, the grounds for default are "clearly established." As previously stated, the clerk has entered default against The Noodles Group. Dkt. 34. Fourth, because The Noodles Group has

3

failed to appear, the Court can find no good-faith mistake or excusable neglect on its part. Fifth, Plaintiffs seek only the relief to which they are entitled under the law, thus mitigating the harshness of a default judgment. Finally, the Court is not aware of any facts giving rise to good cause to set aside default judgment in this case if challenged by The Noodles Group. Accordingly, the Court concludes that default judgment is procedurally warranted.

### B.  There Is a Sufficient Basis for Judgment in the Pleadings

Next, the Court next must determine whether there is a sufficient basis in the pleadings for the judgment requested. *Nishimatsu*, 515 F.2d at 1206 (stating that "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover"). Based on a failure to respond, courts are to assume that a defendant admits all well-pleaded facts in a complaint. A "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

As stated, Plaintiffs allege violations of the FLSA overtime provisions. To state a claim for overtime compensation under the FLSA, a plaintiff must allege that: (1) an employer-employee relationship existed with the defendant during the periods claimed; (2) the plaintiff engaged in activities within the coverage of the FLSA; and (3) the plaintiff was not exempt from the minimum-wage or overtime provisions of the FLSA. *E.g.*, *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019); *Hobbs v. Petroplex Pipe & Constr., Inc.*, 360 F. Supp. 571, 578 (W.D. Tex. 2019), *aff'd*, 964 F.3d 824 (5th Cir. 2020).

Plaintiffs' allegations clearly meet the first and third elements. Plaintiffs allege that they worked as kitchen staff (cooking, washing dishes, and preparing food) at Defendant's restaurant. Dkt. 1 ¶ 18. They routinely worked more than 40 hours per week, and regularly worked more than 55 hours per week. *Id.* ¶ 19. Plaintiffs further allege that Defendant regularly scheduled them to work more than 40 hours per week; did not properly record the number of hours that Plaintiffs

worked each day, and did not properly record their compensation, as required by the FLSA; and failed to pay Plaintiffs the required time and one-half their regular rate of pay as overtime compensation for all hours they worked in excess of 40 hours in each work week. *Id.* ¶¶ 20-23.

To establish the second element under the FLSA, a plaintiff must show that he or she (1) personally engaged in commerce or the production of goods for commerce (individual coverage), or (2) was employed by an enterprise engaged in such activity (enterprise coverage). *See Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (citing 29 U.S.C. § 207(a)(1)). "Either individual or enterprise coverage is enough to invoke FLSA protection." *Id.* (emphasis omitted).

Plaintiffs allege that Defendant is subject to the FLSA as an enterprise engaged in commerce. The FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as an "enterprise" that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);
>
> * * *
>
> (C) is an activity of a public agency.

29 U.S.C. § 203(s)(1).

In their Complaint, Plaintiffs allege that Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 203(s)(1) because its employees engaged in commerce or in the production of goods for commerce, or handled, sold, or otherwise worked on goods that had been moved in or produced for commerce (here, including food and utensils imported from other states and countries), and had an annual

gross volume of sales made or business done in excess of $500,000. Dkt. 1 ¶ 26. Plaintiffs thus have alleged sufficient facts to show that The Noodles Group is liable under the FLSA.

### C.  Proper Relief

Having found that the motion for default judgment should be granted, the Court must determine the appropriate relief. When a party seeks default judgment, damages ordinarily may not be awarded "without a hearing or a demonstration by detailed affidavits establishing the necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). But where the amount of damages can be "determined with certainty by reference to the pleadings and supporting documents," and where a hearing would reveal no pertinent information, "the court need not jump through the hoop of an evidentiary hearing." *James v. Frame*, 6 F.3d 307, 310-11 (5th Cir. 1993). A district court has "wide latitude" in deciding whether to require an evidentiary hearing when granting default judgment. *Id.* at 310.

In this case, Plaintiffs do not request a hearing and have attached declarations to their motion from which the Court may calculate damages. An evidentiary hearing to determine damages therefore is unnecessary. *See EMI April Music Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp. 2d 619, 622 (N.D. Tex. 2008) (stating that an evidentiary hearing may not be necessary "when the plaintiff's motion is accompanied by a detailed affidavit and documentary evidence").

#### 1.  Actual Damages

The FLSA mandates that an employer must pay its employee a rate not less than one and one-half times the regular rate at which he or she is employed if he or she is engaged in a workweek longer than forty hours. 29 U.S.C. § 207 (a)(1). Plaintiffs assert that, under the FLSA, Defendant owes them a total of $5,291.84 in unpaid overtime wages. Plaintiffs calculate this figure by:

6

(1) Converting the flat bi-monthly contractual salary The Noodles Group paid to each Plaintiff into its workweek equivalent by multiplying the bi-monthly salary by 24 (i.e., 2 x 12 months), then dividing the resulting figure by 52 (weeks per year);

(2) Dividing the workweek equivalent by the number of hours each Plaintiff was expected to work per week, to derive his or her regular hourly rate of pay; then

(3) Multiplying the regular rate of pay by one and one-half times for each hour in excess of 40 worked per week.

Dkt. 33 at 7-8. Specifically:

### a. Alfonso Barrientos

Plaintiff Alfonso Barrientos was paid $1,700 twice per month to compensate him for approximately 60 hours each week. Declaration of Alfonso Barrientos (Ex. A), Dkt. 33-1 ¶¶ 9-10. His equivalent weekly salary is $784.62, yielding a regular pay rate of $13.08 per hour and an hourly overtime rate of $19.62.[1] For the relevant time period, the eight weeks beginning October 31, 2016 and ending December 25, 2016, Barrientos should have been paid $523.20 in regular compensation and $392.40 for 20 overtime hours, for total weekly pay of $915.60. Because he was paid $784.62 weekly, he is owed $130.98 per week, for an eight-week total of **$1,047.84**.

### b. Eusebia Nava

Plaintiff Eusebia Nava was paid $1,200 twice per month during the relevant time to compensate her for approximately 60 hours of work each week. Declaration of Eusebia Nava (Ex. B), Dkt. 33-2 ¶¶ 7-8. Her equivalent weekly salary is $554.85, yielding an hourly regular pay rate of $9.23 per hour and hourly overtime rate of $13.85. For the relevant eight-week period, Nava should have been paid $369.20 per week in regular compensation and $277 for her 20 overtime hours, for total weekly pay of $646.20. Because she was paid $554.85 per week, she is owed $91.35 per week, for an eight-week total of **$730.80**.

---

[1] The Plaintiffs incorrectly calculated Barrientos's overtime rate as $19.66.

### c.   Raul Marcelino Castro

Plaintiff Raul Marcelino Castro was paid $1,400 twice per month from October through December 2016 for approximately 60 hours of work each week. Declaration of Raul Marcelino Castro (Ex. C), Dkt. 33-3 ¶¶ 5-7. His equivalent weekly salary is $646.15, regular hourly pay rate is $10.77, and overtime rate is $16.15 per hour. Castro's pay should have been $430.80 in regular pay plus $323.00 for 20 hours of overtime, totaling $753.80 per week. Because Castro was paid $646.15, he is owed $107.65 for each of eight weeks, totaling **$861.20**.

Based on this undisputed evidence, the Court finds that Plaintiffs have sustained their burden and are entitled to **$2,639.84** in actual damages.

### 2.   Liquidated Damages

Plaintiffs also seek an award of liquidated damages in an amount equal to unpaid overtime pay, pursuant to § 216(b) of the FLSA, which provides: "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." An award of liquidated damages to a prevailing plaintiff in a FLSA action is mandatory, unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." *Id.* at § 260. The Fifth Circuit has cautioned that, "[u]nder the FLSA, a district court may not exercise its discretionary authority to reduce or to eliminate a liquidated damages award unless the employer first sustains its burden of showing that its failure to obey the statute was in good faith." *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 928 (5th Cir. 1999).

Because it has not participated in this case, The Noodles Group has failed to meet this burden. In addition, The Noodles Group, by its default, admits Plaintiffs' well-pleaded allegations of fact,

8

including that its violations were willful. Therefore, in addition to Plaintiffs' actual damages, each

plaintiff should be awarded liquidated damages in an amount equal to his or her unpaid overtime,

as shown in the following chart.

| Plaintiff | Unpaid Wages | Liquidated Damages | Total Damages |
|---|---|---|---|
| Alfonso Barrientos | $1,047.84 | $1,047.84 | $2,095.68 |
| Eusebia Nava | $730.80 | $730.80 | $1,461.60 |
| Raul Marcelino Castro | $861.20 | $861.20 | $1,722.40 |
| **Total** | | | **$5,279.68** |

### 3. Attorneys' Fees and Costs

An award of attorneys' fees to a prevailing plaintiff in a FLSA case is mandatory. 29 U.S.C.

§ 216(b) ("The court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs,

allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Black v.

SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) ("Under the FLSA, an employer who violates

the statute is also required to pay attorney's fees.").[2] Courts use the "lodestar method" to calculate

an appropriate fee award under the FLSA. The lodestar amount is calculated by multiplying the

number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is

the market rate in the community for this work. "There is a strong presumption of the

reasonableness of the lodestar amount." *Id.* After calculating the lodestar amount, a court may

enhance or decrease the amount of attorney's fees, based on the factors set forth in *Johnson v. Ga.

Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated on other grounds by Blanchard*

---

[2] Fees for law students and law clerks also may be recovered. *See Missouri v. Jenkins*, 491 U.S. 274, 286 (1989); *Alter Fin. Corp. v. Citizens & S. Int'l Bank of New Orleans*, 817 F.2d 349, 350 (5th Cir. 1987).

*v. Bergeron*, 489 U.S. 87 (1989).[3] The party seeking fees has the burden to show the reasonableness of the hours billed and the exercise of reasonable billing judgment. *Black*, 732 F.3d at 502.

Plaintiffs request $9,552 in attorney's fees. One of Plaintiffs' attorneys, Caitlin Boehne, submitted a declaration detailing the qualifications of counsel and attesting to the reasonableness of the rates charged in the market. Unsworn Declaration of Caitlin Boehne in Support of Award of Attorney Fees (Ex. D), Dkt. 33-4. Boehne also included a copy of time records detailing the time expended in prosecuting the case against The Noodles Group[4] and the nature of the work performed, as follows:

- 14.7 hours of work by licensed attorney Caitlin Boehne at a rate of $360 per hour (totaling $5,112, after write-offs and reductions);

- 5.5 hours of work by licensed attorney Christopher J. Willett at $405 per hour ($2,227.50); and

- Work billed at a rate of $125 per hour for the following law student interns:

    o Samuel Drusina, 5.8 hours ($725);

    o Vail Kohnert-Yount, 2.2 hours ($275); and

    o Paul Samuel, 9.7 hours ($1,212.50).

Ex. D-1, Dkt. 33-4 at 7-8.

After carefully reviewing the time records and declaration, the Court finds that the hours expended on the case, and the hourly rates charged, are reasonable. *Cf. Meesook v. Grey Canyon*

---

[3] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

[4] Because the Court has already awarded some of Plaintiffs' fees and costs, Plaintiffs state that they have limited their request here "to include only what Plaintiffs' counsel expended investigating this matter, filing suit, serving Noodles Group, and preparing this Motion." Dkt. 33 at 11.

*Family Med., P.A.*, No. 5:13-CV-729-XR, 2014 WL 5040133, at *4 (W.D. Tex. Oct. 8, 2014) (finding $400 per hour a reasonable and customary rate for a FLSA case); *Saldivar v. Austin Indep. Sch. Dist.*, No. A-14-CA-00117-SS, 2016 WL 1064654, at *4 (W.D. Tex. Mar. 15, 2016), *aff'd*, 675 F. App'x 429 (5th Cir. 2017) (finding a paralegal hourly rate of $125 to be reasonable). Accordingly, Plaintiff is entitled to an award of $9,552 in attorneys' fees.

### 4.  Costs

Plaintiffs also request reimbursement for $605 in court costs. In her declaration, Boehne states that Plaintiffs incurred $400 in filing fees and $205 in fees for service of process on Defendant. Plaintiff is entitled to recover $605 in costs from The Noodles Group under 20 U.S.C. § 1920(a).

### 5.  Summary

In sum, the undersigned recommends an award of (1) $2,639.84 in actual monetary damages, (2) $2,639.84 in liquidated damages, (3) $9,552 in attorneys' fees, and (4) $605 in costs, for a total award of $15,436.68.

### IV.    Recommendation

The undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for Entry of Default Final Judgment (Dkt. 33) and **ENTER JUDGMENT** in favor of Plaintiffs Alfonso Barrientos, Eusebia Nava, and Raul Marcelino Castro against Defendant The Noodles Group, Inc. d/b/a Shabu.

The undersigned **FURTHER RECOMMENDS** that the District Court award Plaintiff $2,639.84 in actual monetary damages, $2,639.84 in liquidated damages, $9,552 in attorneys' fees, and $605 in costs.

It is **FURTHER ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the Honorable Robert Pitman.

## V.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on August 10, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE